UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **LOUISIANA INTERNATIONAL MARINE LLC and FLEUR DE LIS MARINE, LLC** | **CIVIL ACTION NO:** |
| **VERSUS** | **DISTRICT JUDGE HON.** |
| **ASPEN AMERICAN INSURANCE COMPANY** | |

## COMPLAINT

NOW INTO COURT come Louisiana International Marine, LLC, and Fleur De Lis Marine, LLC, which respectfully aver:

### A. Parties and Venue

1.

Louisiana International Marine, LLC is a company licensed to do business and doing business in Louisiana and the owner pro hac vice of certain vessels, including the M/V LA INVADER. All its members are Louisiana domiciliaries. Fleur De Lis Marine is a company licensed to do business in Louisiana and doing business in Louisiana and the owner, but not the owner pro hac vice, of the M/V LA INVADER.

2.

Aspen American Insurance Company is an insurer doing business in the state of Louisiana. Relevant to this suit, Aspen underwrote the M/V LA INVADER with a port risks policy.

3.

Aspen issued port risks policy number OM012FM24, with a policy period of 3rd October 2024 to 3rd October 2025, to Louisiana International, covering the M/V LA INVADER. Subject to its terms and conditions, this policy (the Port Risks Policy) provided coverage to the M/V LA INVADER.

4.

Subject matter jurisdiction is appropriate in this Court under 28 U.S.C. 1333 because a marine insurance policy like the Port Risks Policy is a type of maritime contract to which federal admiralty jurisdiction applies.

5.

There is also subject matter jurisdiction under 28 U.S.C. 1332 as the parties are completely diverse. Louisiana International Marine is a Louisiana limited liability company and all its members are Louisiana domiciliaries. Fleur De Lis Marine is a Louisiana limited liability company and all its members are Louisiana domicliaries. Aspen is not domiciled in Louisiana for diversity purposes. The amount in controversy is in excess of $75,000.

6.

Personal jurisdiction is appropriate in this Court against Aspen because the Port Risks Policy calls for jurisdiction in the Southern District of New York.

**B. Loss of the M/V LA INVADER**

7.

Aspen issued to Louisiana International Port Risks Policy No. OM012FM24 with a policy period of 3rd October 2024 to 3rd October 2025. The policy included a warranty, that "all vessels shall be port risk in Larose, LA." Port risk is a type of marine insurance that covers vessels that are not in navigation.

8.

One of the vessels insured by the Port Risks Policy and listed on the schedule of vessels was the LA INVADER, a tug owned by Louisiana International and kept by Louisiana

International at a certain fleeting facility, Bollinger LaRose, unused, during the entire pendency of the policy period.

9.

Prior to the arrival of the LA INVADER at Bollinger LaRose and prior to the inception of the Port Risks Policy, the LA INVADER had been on standby, not working, while its owner attempted to sell the vessel at Allied Shipyard, a shipyard near LaRose, Louisiana.

10.

In that time period, in or around June of 2024, the LA INVADER began leaking water through the stuffing box. The stuffing box on a vessel is connected to the stern tube, and it is where the propeller shaft passes from the interior of the vessel (the engine) to the exterior (the propeller).

11.

In response, Louisiana International pumped out the engine room on the LA INVADER. Further, Louisiana International hired a third-party contractor to wrap the propeller shafts and to seal the propeller shafts to prevent the ingress of water.

12.

Furthermore, Louisiana International, in consultation with another third-party contractor, caused a bladder that was installed on the vessel to be inflated. A bladder is an inflatable (and, indeed, inflated) donut that fits around the propeller shaft to seal the stern tube and prevent the ingress of water.

13.

Through these actions, any and all leaking into the engine room of the LA INVADER was stopped, and stopped twice – once through the propeller shaft wrapping, and again through the bladder.

14.

Louisiana International then moved the LA INVADER to Bollinger LaRose, a different fleeting facility.

15.

Louisiana International further procured the Port Risks Policy referenced *infra*.

16.

While the LA INVADER was at Bollinger LaRose, Louisiana International, by and through Anthony Roberts, one of Louisiana International's managers, would check on the vessel to ensure there were no issues with the vessel.

17.

Furthermore, Louisiana International contracted with a third-party, an expert in diesel engines and a former port captain who had experience managing fleets of vessels, to check on the vessel regularly.

18.

This individual, Robert Dean, regularly checked on the LA INVADER to ensure it was not at risk. Mr. Dean, in his regular inspections of the vessel, would walk the vessel and check on the engine room, including checking for water. Mr. Dean never found any problem with the vessel.

19.

On or about January 9, 2025, the LA INVADER, while it was at LaRose, suddenly and without warning took water into the engine room, causing the vessel to list and then to touch bottom.

20.

Though not known at the time, Louisiana International now knows the cause of the ingress of water was the bursting of the bladder and the failure of the propeller shaft wraps, allowing water in.

21.

The ingress of water was sudden and emergent, and there was no possibility for Louisiana International to stop the ingress in time to prevent the engines from becoming submerged.

22.

Louisiana International, in concert with surveyors and salvors appointed by Aspen, remediated the pollution claim, pumped out the engine room, and investigated the cause of the accident.

23.

On or about May 6, 2025, Aspen sent a denial of coverage correspondence to Louisiana International.

24.

The M/V LA INVADER is a constructive total loss because the cost to repair the vessel and replace the engines exceeds the insured value of the vessel, $1,400,000.

## C. Coverage under the Port Risks Policy

25.

The Port Risks Policy, consists of two parts: a P&I provision (P&I coverage typically covers third-party risks), and a hull policy (which typically covers first-party risks). The policy is attached here as Exhibit A.

26.

The M/V LA INVADER is listed on the "Schedule of Vessels – Hull," with an agreed value of $1,400,000.

27.

The policy covers certain risks, outlined in the Perils clause, including perils of the seas, and "Barratry of the Master and Mariners and of all other like Perils, Losses and Misfortunes that have or shall come to the Hurt, Detriment or Damage of the Vessel, or any part thereof."

28.

The policy further includes an inchmaree clause, which provides, in relevant part, coverage for:

a. Breakdown of motor generators or other electrical machinery and electrical connections thereto, bursting of boilers, breakage of shafts, or any latent defect in the machinery or hull, (excluding the cost and expense of replacing or repairing the defective part);

b. Negligence of Charterers and/or Repairers, provided such Charterers and/or Repairers are not an Assured hereunder;

c. Negligence of Masters, Officers, Crew or Pilots;

29.

The policy includes both an express and implied warranty of seaworthiness. The express warranty of seaworthiness is within the inchmaree clause, and it allows that there is coverage "provided such loss or damage has not resulted from want of due diligence by the Assured, the Owners or Managers of the Vessel, or any of them."

30.

The policy further included an express watchman warranty, as follows: "It is warranted the insured shall employ or contract with a suitable watchman who will make careful examination of the Vessel throughout at reasonable intervals, including inspection of the bilges."

31.

Axiomatically, it is the insured's obligation to prove coverage under the policy, and it is the insurer's obligation to prove an exclusion. The loss of the M/V INVADER, as a result of both (a) the failure of the wrapping of the stern tubes and (b) the failure of the bladder, constitutes a covered happening under the perils provision of the policy, which expressly covers "all other like Perils, Losses and Misfortunes that have or shall come to the Hurt, Detriment or Damage of the Vessel, or any part thereof."

32.

Furthermore, the failure of the propeller shaft wrapping and of the bladder constitute a covered peril under the inchmaree clause in multiple regards, including a latent defect in the machinery and hull; and negligence of the repairer who installed the propeller shaft wrapping.

33.

Louisiana International at all times made reasonable effort to keep the vessel seaworthy, including the hiring of a third-party contractor to walk the vessel reasonably. Louisiana International materially complied with the policy provisions in full.

34.

Louisiana International has at all times complied with all the terms and conditions of the Policy.

35.

The loss of the LA INVADER and the flooding into the engine room, as a covered peril under the policy and as a total loss, entitles Louisiana International to coverage in the amount of $1,400,000, the insured value of the policy.

36.

Despite the foregoing, Aspen has denied coverage, and the cost to Louisiana International and/or Fleur de Lis is the agreed value of the vessel.

37.

Louisiana International prays for and is entitled to a trial by jury.

**WHEREFORE**, Louisiana International and Fleur de Lis pray that there be judgment in its favor and against Aspen, holding that Aspen pay Louisiana International and/or Fleur de Lis for the total loss of the M/V LA INVADER, along with attorneys' fees, costs, and any other just and equitable relief to which Louisiana International and/or Fleur de Lis may be entitled.

**DATED**: July 30, 2025

Respectfully submitted:

**BOHMAN | MORSE, LLC**

/s/Harry E. Morse
HARRY E. MORSE (#31515)
MARTIN S. BOHMAN (#22005)
400 POYDRAS STREET, SUITE 2050
NEW ORLEANS, LA 70130
TELEPHONE: (504) 930-4009
FAX: (888) 217-2744
E-MAIL: HARRY@BOHMANMORSE.COM
E-MAIL: MARTIN@BOHMANMORSE.COM

*Attorneys for Louisiana International Marine LLC*
*Motion to appear pro hac vice to be filed with complaint*